## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MASSACHUSETTS

### CASE NO.:

**ADLER ELIACIN,**
      Plaintiff,

**vs.**

**STATE STREET BANK & TRUST CO.,**
      Defendant.
_____/

### <u>CLASS ACTION COMPLAINT</u>

Named Plaintiff, ADLER ELIACIN ("Plaintiff"), by and through the undersigned counsel, individually and on behalf of all others similarly situated, hereby files this Class Action Complaint alleging Defendant STATE STREET BANK & TRUST CO., ("Defendant") violated the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), by failing to provide Plaintiff and the putative class members with a COBRA notice that complies with the law. The Plaintiff, further hereby sues Defendant, for declaratory and injunctive relief and damages pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 ("Title VII"); the Civil Rights Act of 1866, 42 U.S.C. §1981 ("§ 1981"), to redress injuries resulting from Defendant's unlawful race-based discriminatory treatment of and retaliation against Plaintiffs; and Whistleblower Acts, M.G.L. ch. 149, § 185, by retaliating against him for reporting, objecting to, and filing complaints about ongoing violations by Defendants.  Defendant also retaliates against Plaintiff and similarly situated persons in Plaintiff's protected class and in support avers as follows:

## GENERAL ALLEGATIONS:
## JURISDICTION, VENUE, AND PARTIES

1.  This is an action for damages in excess of One Hundred Thousand Dollars ($100,000), exclusive of attorney's fees, interest and costs; and therefore, this action is within the jurisdiction of this Court. At all times material hereto, Plaintiff is a resident of Boston, Massachusetts.

2.  Defendant is a For Profit Corporation with its primary place of business and headquarters in Boston, Massachusetts.

3.  This Court has jurisdiction over this action pursuant to 29 U.S.C. § 1132(e) and (f), and also pursuant to 28 U.S.C. §§ 1331 and 1355.

4.  Plaintiff experienced a qualifying event within the meaning of 29 U.S.C. § 1163(2).

5.   Defendant is a Plan Administrator within the meaning of 29 U.S.C. § 1002(16)(A).

6.  Regarding Plaintiff's discrimination claims, Plaintiff has exhausted its administrative remedies by filing a timely charge with the appropriate agency.

7.  Plaintiff timely filed a charge of employment discrimination with the Equal Employment Opportunity Commission (EEOC), the agency which is responsible for investigating claims of employment discrimination.

8.  The EEOC outlined to the Defendant employer the reasonable cause for its belief that the Defendant employer is in violation of the act.

9.  The EEOC offered the Defendant employer an opportunity for voluntary compliance.

10. The EEOC attempted conciliation with the Defendant employer.

11. All conditions precedent for the filing of this action before this Court have indeed been previously met, including the exhaustion of all pertinent administrative procedures and remedies.

## FACTUAL ALLEGATIONS

12. Plaintiffs is a Black individual and within a class of individuals protected by Title VII and §
1981.

13. Plaintiffs began working for Defendant on or about April 07, 2015 as a Senior Talent
Acquisition Specialist and Diversity Consulting Officer.

14. In Plaintiff's initial role was to be responsible for sourcing and recruiting diverse talent at
State Street to help the company meet its Senior Leadership initiative.

15. Black or brown talents recruited by Plaintiff were often disregarded without explanation by
white team members to which Plaintiff reported to.

16. Plaintiff was overlooked and disregarded throughout his employment due to his race despite
his qualifications.

17. On or about May of 2018, Plaintiff accepted the role in "Supplier Relationship Management"
position focusing on Supplier Diversity. White woman recruiter for the position Hallie Hinckley
low ball the salary offers for the position out of retaliation.

18. At the beginning of the role both Jason Cipriano, Brian Downer and Eric Aboaf, all white
males, were very supportive of the supplier diversity program. Eric Aboaf, EVP and Chief
Financial Officer (CFO) email the senior leadership (SVP) in procurement showing support for
program and budget.

19. During conferences and meetings that were meant to attract minority business contracts,
Jason Cipriano often erected roadblocks by stating he didn't believe minority businesses were
qualified to do business with a company the size of State Street and that they would likely be
incapable of understanding State Street contract.

20. Plaintiff on many occasions explained to Jason Cipriano that data proves the majority of minority, women, and veteran-owned vendors are over-qualified and would probably do a better job than non-certified business. Jason Cipriano would disregard Plaintiff and, on several occasions, would ask Plaintiff to fabricate the Supplier Diversity data because the supplier diversity metrics vendors were low.

21. Plaintiff complained several times about countless misappropriate requests as well as the pattern of racism and eventually. Managers Jason Cipriano, Eve Reiter, Steven Anastasi, Christopher Malley, were unappreciative of Plaintiff's unwillingness to simply do as he is told, and they retaliated to make Plaintiff's life at State Street unreasonable. Manager Jason Cipriano used fabrication information to received funding to sit on the board of a Connecticut based organization - Greater New England Minority Supplier Development Council. Plaintiff explained to Jason Cipriano that we should not participate in any "pay to play" to seat on the board. Plaintiff reported the incident to Eve Reiter and Human Resources. During a meeting with Plaintiff and the Human Resources Specialist Partner to Christopher Malley. The HR Partner representative told Plaintiff "If Chris wants you to pay to play you need to shut up and pay to play."

22. After a meeting with Steven Anastasi, Jason Cipriano told Plaintiff's "I can't understand why you are still here after everything we have done to you."

23. On around October 2019 plaintiff was hosting a State Street corporate partner - Center for Women & Enterprise (CWE) Corporate Council Meeting and Reception for the new Executive Director. Jason Cipriano wouldn't provide budget for the event and said Christopher Malley told him to find the money somewhere else. CWE is a nonprofit organization dedicated to help women business owners to start and grow their businesses. Both Eric Aboaf, EVP and Chief

Financial Officer (CFO) and Yvonne Garcia, SVP, Chief of Staff to CEO was speaking at the event.  The plaintiff had to spend his own money and work with State Street Employee Resource Groups (EPG) including the Black Professional Group (BPG)and Professional Women's Network (PWN) to pay for the event. Plaintiff end up spending his own money on all future support of State Street Supplier Diversity initiatives.

24. Ultimately, Plaintiff, Adler Eliacin, was terminated as the Head of Supply Diversity on or about January 22, 2020 by Defendant in retaliation for the above-described protected activity.

25. Throughout Plaintiff's employment he was subjected to all matter of adverse employment actions even though he never received any complaints about his work performance, and he was otherwise able to perform his duties at or above satisfactory levels.

26. Throughout his employment, Defendant engaged in intentional discriminatory conduct including but not limited to giving more favorable opportunities. Similarly situated, non-Black team member were not subject to such treatment.

27. Any reason proffered by Defendant for the conduct described above is mere pretext for unlawful discrimination and retaliation. Throughout their employment Plaintiffs were able to perform the essential functions of their job duties and responsibilities, and at all relevant times did perform their job at satisfactory or above-satisfactory levels.

28. The COBRA amendments to ERISA included certain provisions relating to continuation of health coverage upon termination of employment or another "qualifying event" as defined by the statute. Among other things, COBRA requires the plan sponsor of each group health plan normally employing more than 20 employees on a typical business day during the preceding year to provide "each qualified beneficiary who would lose coverage under the plan as a result of a

qualifying event … to elect, within the election period, continuation coverage under the plan." 29 U.S.C. § 1161.

29. Notice is of enormous importance. The COBRA notification requirement exists because employees are not expected to know instinctively of their right to continue their healthcare coverage.

30. Moreover, existing case law makes it ostensibly clear that notice is not only required to be delivered to covered employees but to qualifying beneficiaries, as well.

31. COBRA further requires the administrator of such a group health plan to provide notice to any qualified beneficiary of their continuation of coverage rights under COBRA upon the occurrence of a qualifying event. 29 U.S.C. § 1166(a)(4). This notice must be "[i]n accordance with the regulations prescribed by the Secretary" of Labor. 29 U.S.C. § 1166(a).

32. To facilitate compliance with notice obligations, the United States Department of Labor ("DOL") has issued a Model COBRA Continuation Coverage Election Notice ("Model Notice"), which is included in the Appendix to 29 C.F.R. § 2590.606-4. The DOL website states that the DOL "will consider use of the model election notice, appropriately completed, good faith compliance with the election notice content requirements of COBRA."

33. In the event that a plan administrator declines to use the Model Notice and fails to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, the administrator is subject to statutory penalties of up to $110 per participant or beneficiary per day from the date of such failure. 29 U.S.C. § 1132(c)(1). In addition, the Court may order such other relief as it deems proper, including but not limited to injunctive relief pursuant to 29 U.S.C. § 1132(a)(3) and payment of attorneys' fees and expenses pursuant to 29 U.S.C. § 1132(g)(1). Such is the case here. Defendant failed to use the Model Notice and failed to meet the notice requirements of 29

U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, as set forth below. Defendant's Notice Is Inadequate and Fails to Comply with COBRA.

34. Defendant partially adhered to the Model Notice provided by the Secretary of Labor, but only to the extent that served Defendant's best interests, as critical parts are omitted or altered in violation of 29 C.F.R. § 2590.606-4. Among other things: a. Defendant's "Cobra Enrollment Notice" violates 29 C.F.R. § 2590.606-4(b)(4)(xii) because it fails to provide the address to which payments should be sent; b. Defendant's COBRA forms violate 29 C.F.R. § 2590.606-4(b)(4)(v) because the notice itself never actually explains how to enroll in COBRA, nor does it bother including a physical election form (both of which the model Department of Labor form includes); c. Defendant's COBRA forms violate 29 C.F.R. § 2590.606-4(b)(4)(vi) because fail to provide all required explanatory information; and d. Defendant's COBRA forms violate 29 C.F.R. § 2590.606-4(b)(4) because Defendant has failed to provide a notice written in a manner calculated to be understood by the average plan participant.

35. Defendant's COBRA notice confused Plaintiff and resulted in Plaintiff's inability to make an informed decision as to electing COBRA continuation coverage. In fact, Plaintiff did not understand the notice and, further, Plaintiff was unable to elect COBRA because of the confusing and incomplete COBRA notice. For example, the Defendant's COBRA notice omission of a payment address left Plaintiff without information on where to mail payment if elected. Similarly, the Cobra Enrollment Notice failed to sufficiently explain how to enroll in COBRA.

36. Plaintiff could not make an informed decision about Plaintiff's health insurance and lost health coverage.

## Named Plaintiff ADLER ELIACIN

37. Named Plaintiff Adler Eliacin worked for Defendant from April 7, 2015 until Plaintiff's termination on January 22, 2020.

38. As a result of Plaintiff's termination, Plaintiff experienced a qualifying event as defined by 29 U.S.C. § 1163(2).

39. Following this qualifying event, Defendant caused its COBRA Administrator to mail Plaintiff a deficient COBRA enrollment notice form.

40. The deficient COBRA notice that Plaintiff received was violative of COBRA's mandates for the reasons set forth herein.

41. Defendant has in place no administrative remedies Plaintiff was required to exhaust prior to bringing suit.

42. Additionally, because no such administrative remedies exist, any attempt to exhaust the same would have been futile.

43. Plaintiff suffered a tangible injury in the form of lost health insurance coverage because of Defendant's deficient COBRA notice.

44. Plaintiff suffered a concrete injury when Plaintiff refrained from seeing a physician because Plaintiff lost the health insurance.

45. Additionally, Plaintiff suffered a tangible injury in the form of economic harm when Plaintiff had to pay full price for medical expenses, including medication.

46. Not only that, Plaintiff suffered injury in the form of stress and anxiety created by the loss of Plaintiff's health insurance coverage because of Defendant's deficient COBRA notice.

47. Plaintiff also suffered a tangible injury in the form of lost prescription benefits because of Defendant's deficient COBRA notice.

48. Plaintiff suffered further tangible injury in the form of lost medical treatment.

49. Finally, when Plaintiff did obtain alternative coverage it was much worse.

50. Finally, Plaintiff suffered an informational injury as a result of Defendant's deficient COBRA notice because Plaintiff was never provided all information to which Plaintiff was entitled by 29 C.F.R. § 2590.606-4(b).

51. No administrative remedies exist as a prerequisite to Plaintiff's claims on behalf of the Putative Class as Plaintiff is not making a claim for benefits or payment for benefits under any health plan.

56. Nor does Plaintiff challenge the termination of Plaintiff's health benefits after Plaintiff experienced a qualifying event.

52. Rather, Plaintiff is simply challenging the legal sufficiency of Defendant's post-employment COBRA notices. As such, any efforts related to exhausting under such non-existent remedies are/were futile.

## COUNT I
## Race Discrimination in Violation of Title VII

53. Plaintiffs re-adopt each and every factual allegation as stated in paragraphs 1-52 of this complaint as if set out in full herein.

54. Plaintiffs are members of a protected class under Title VII.

55. By the conduct describe above, Defendant has engaged in discrimination against Plaintiffs because of Plaintiffs' race and subjected Plaintiffs to animosity based on race.

56. Such discrimination was based upon the Plaintiffs' race in that Plaintiffs would not have been the object of discrimination but for the fact that Plaintiffs are Black.

57. Defendant's conduct complained of herein was willful and in disregard of Plaintiffs' protected rights. Defendant and its supervisory personnel were aware that discrimination on the basis of race was unlawful but acted in reckless disregard of the law.

58. At all times material hereto, the employees exhibiting discriminatory conduct towards Plaintiffs possessed the authority to affect the terms, conditions, and privileges of Plaintiffs' employment with Defendant.

59. Defendant retained all employees who exhibited discriminatory conduct toward Plaintiffs and did so despite the knowledge of said employees engaging in discriminatory actions.

60. As a result of Defendant's actions, as alleged herein, Plaintiffs have been deprived of rights, have been exposed to ridicule and embarrassment, and they have suffered emotional distress and damage.

61. The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and the Defendant's failure to make prompt remedial action to prevent continued discrimination against Plaintiffs, deprived Plaintiffs of statutory rights under federal law.

62. The actions of Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to Plaintiffs' statutorily protected rights, thus entitling Plaintiffs to damages in the form of compensatory and punitive damages pursuant to federal law, to punish the Defendant for its actions and to deter it, and others, from such action in the future.

63. Plaintiffs have suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

**WHEREFORE,** Plaintiffs respectfully pray for the following relief against Defendant:

      a. Adjudge and decree that Defendant has violated Title VII, and has done so willfully, intentionally, and with reckless disregard for Plaintiffs' rights;

b. Enter a judgment requiring that Defendant pay Plaintiffs appropriate back pay, benefits adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c. Enter an award against Defendant and award Plaintiffs compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

d. Require Defendant to reinstate Plaintiffs to the position at the rate of pay and with the full benefits Plaintiffs would have had Plaintiffs not been discriminated against by Defendant, or in lieu of reinstatement, award front pay;

e. Award Plaintiffs the costs of this action, together with a reasonable attorney fees; and

f. Grant such additional relief as the Court deems just and proper.

## COUNT II:
## Race Discrimination in Violation of 42 U.S.C. § 1981

64. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-52 of this complaint as if set out in full herein.

65. Plaintiff is a member of a protected class under § 1981.

66. By the conduct describe above, Defendant has engaged in discrimination against Plaintiffs because of Plaintiffs' race and subjected Plaintiffs to animosity based on race.

67. Such discrimination was based upon the Plaintiffs' race in that Plaintiffs would not have been the object of discrimination but for the fact that Plaintiffs are Black.

68. Defendant's conduct complained of herein was willful and in disregard of Plaintiffs' protected rights. Defendant and its supervisory personnel were aware that discrimination on the basis of race was unlawful but acted in reckless disregard of the law.

69. At all times material hereto, the employees exhibiting discriminatory conduct towards Plaintiffs possessed the authority to affect the terms, conditions, and privileges of Plaintiffs' employment with Defendant.

70. Defendant retained all employees who exhibited discriminatory conduct toward Plaintiffs and did so despite the knowledge of said employees engaging in discriminatory actions.

71. As a result of Defendant's actions, as alleged herein, Plaintiffs have been deprived of rights, have been exposed to ridicule and embarrassment, and they have suffered emotional distress and damage.

72. The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and the Defendant's failure to make prompt remedial action to prevent continued discrimination against Plaintiffs, deprived Plaintiffs of statutory rights under federal law.

73. The actions of Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to Plaintiffs' statutorily protected rights, thus entitling Plaintiffs to damages in the form of compensatory and punitive damages pursuant to federal law, to punish the Defendant for its actions and to deter it, and others, from such action in the future.

74. Plaintiffs have suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

75. So that Plaintiffs' rights may be protected, Plaintiffs have retained the undersigned counsel who is entitled to attorney's fees pursuant to 42 U.S.C. § 1988, the Civil Rights Attorneys Fee Award Act.

**WHEREFORE,** Plaintiffs respectfully prays for the following relief against Defendant:

a. Adjudge and decree that Defendant has violated 42 U.S.C. § 1981, and has done so willfully, intentionally, and with reckless disregard for Plaintiffs' rights;

b. Enter a judgment requiring that Defendant pay Plaintiffs appropriate back pay, benefits adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c. Enter an award against Defendant and award Plaintiffs compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

d. Require Defendant to reinstate Plaintiffs to the position at the rate of pay and with the full benefits Plaintiffs would have had Plaintiffs not been discriminated against by Defendant, or in lieu of reinstatement, award front pay;

e. Award Plaintiffs the costs of this action, together with a reasonable attorney fees; and

f. Grant such additional relief as the Court deems just and proper.

## COUNT III
## Retaliation in Violation of Title VII

76. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-52 of this complaint as if set out in full herein.

77. By the conduct describe above, Defendant retaliated against Plaintiffs for exercising rights protected under Title VII.

78. Defendant's conduct complained of herein was willful and in disregard of Plaintiffs' protected rights. Defendant and its supervisory personnel were aware that discrimination on the basis of race was unlawful but acted in reckless disregard of the law.

79. As a result of Defendant's actions, as alleged herein, Plaintiffs have been deprived of rights, have been exposed to ridicule and embarrassment, and they have suffered emotional distress and damage.

80. The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and the Defendant's failure to make prompt remedial action to prevent continued discrimination against Plaintiffs, deprived Plaintiffs of statutory rights under federal law.

81. The actions of Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to Plaintiffs' statutorily protected rights, thus entitling Plaintiffs to damages in the form of compensatory and punitive damages pursuant to federal law, to punish the Defendant for its actions and to deter it, and others, from such action in the future.

82. Plaintiffs have suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

**WHEREFORE,** Plaintiffs respectfully prays for the following relief against Defendants:

     a. Adjudge and decree that Defendants have violated Title VII, and have done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

     b. Enter a judgment requiring that Defendants pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

     c. Enter an award against Defendants and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

     d. Require Defendants to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had Plaintiff not been discriminated against by Defendants, or in lieu of reinstatement, award front pay;

     e. Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and

     f. Grant such additional relief as the Court deems just and proper.

## COUNT IV
## Retaliation in Violation of 42 U.S.C. § 1981

83. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-52 of this complaint as if set out in full herein.

84. By the conduct describe above, Defendant retaliated against Plaintiffs for exercising rights protected under § 1981.

85. Defendant's conduct complained of herein was willful and in disregard of Plaintiffs' protected rights. Defendant and its supervisory personnel were aware that discrimination on the basis of race was unlawful but acted in reckless disregard of the law.

86. As a result of Defendant's actions, as alleged herein, Plaintiffs have been deprived of rights, have been exposed to ridicule and embarrassment, and they have suffered emotional distress and damage.

87. The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and the Defendant's failure to make prompt remedial action to prevent continued discrimination against Plaintiffs, deprived Plaintiffs of statutory rights under federal law.

88. The actions of Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to Plaintiffs' statutorily protected rights, thus entitling Plaintiffs to damages in the form of compensatory and punitive damages pursuant to federal law, to punish the Defendant for its actions and to deter it, and others, from such action in the future.

89. Plaintiffs have suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

**WHEREFORE,** Plaintiffs respectfully prays for the following relief against Defendants:

a. Adjudge and decree that Defendants have violated § 1981, and have done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b. Enter a judgment requiring that Defendants pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c. Enter an award against Defendants and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

d. Require Defendants to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had Plaintiff not been discriminated against by Defendants, or in lieu of reinstatement, award front pay;

e. Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and

f. Grant such additional relief as the Court deems just and proper.

### COUNT V
### Whistleblower (M.G.L. ch. 149 § 185)

90. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-52 of this complaint as if set out in full herein.

91. Plaintiff through various means and measures, reported, objected to, filed written complaints and reports about ongoing violations of law by Defendant.

92. The Defendant, through its agents and employees retaliated against Plaintiff for disclosing, objecting to, and/or refusing to participate in an activity, policy, or practice which Plaintiff reasonably believed were in violation of a law and/or a rule or regulation promulgated by law, in violation of the Massachusetts Whistleblower statute, G.L.c.149 §185 (b)(3).

93. Plaintiff has been retaliated against for reporting and objecting to such actions and as a result of raising these issues was subsequently subjected to disparate treatment, a hostile work environment, retaliatory acts, and threats to terminate his employment.

94. As a consequence of the Defendant's actions, Plaintiff suffered and continues to suffer damages, including, but not limited to: loss of income, loss of employment benefits, other financial losses, loss of professional opportunities, loss of personal and professional reputation, loss of community standing, and mental distress.

   **WHEREFORE,** Plaintiff respectfully requests judgement against the Defendants on Count V, plus interest and costs to this action, and reasonable attorney's fees as provided under G.L.c.149, Section 185.

### COUNT VI:
### VIOLATION OF 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4

95. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-52 of this complaint as if set out in full herein.

96. The Defendant offered Plaintiff and other similarly situated personnel a group health plan. The group health plan is a group health plan within the meaning of 29 U.S. C. § 1167(1).

97. Defendant is the plan sponsor and plan administrator of the group health plan and was subjected to the continuation of coverage and notice requirements of COBRA.

98. Despite having access to the Department of Labor's Model COBRA form, Defendant chose not to use the model form— presumably to save money by pushing terminated employees away from electing COBRA. In fact, according to one Congressional research service study, "…[The] average claim costs for COBRA beneficiaries exceeded the average claim for an active employee by 53%. The average annual health insurance cost per active employee was $7,190, and the COBRA cost was $10,988.14. The Spencer & Associates analysts contend.

99. Put another way, instead of utilizing the DOL Model Notice and sending a single COBRA notice "written in a manner calculated to be understood by the average plan participant" containing all required by law, to save money Defendant instead opted to break the information into multiple documents, mailed separately under different cover, containing bits and pieces of information on COBRA, both of which are still missing critical information. In fact, the DOL Model Notice was designed to avoid precisely the issues caused by Defendant's confusing and piecemeal COBRA rights notification process.

100.    These violations were material and willful.

101.    Defendant knew that it should have sent timely and/or non-deficient notice consistent with the Secretary of Labor's Model Notice and failed to comply with 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4, in deliberate or reckless disregard of the rights of Plaintiff and other Class Members.

102.    The deficient COBRA notices at issue in this lawsuit both confused and misled Plaintiff. It also caused Plaintiff economic injuries in the form of lost health insurance and unpaid medical bills, as well as informational injuries.

103.    Defendant has repeatedly violated ERISA by failing to provide participants and beneficiaries in the Plan with adequate notice, as prescribed by COBRA, of their right to continue their health coverage upon the occurrence of a "qualifying event" as defined by the statute.

104.    Defendant's COBRA notice and process violates the law. Rather than including all information required by law in a single notice, written in a manner calculated to be understood by the average plan participant, Defendant's COBRA notification process instead offers only part of the legally required information in haphazard and piece-meal fashion. hat this indicates that the COBRA population is sicker than active-covered employees and that the 2% administrative fee

allowed in the law is insufficient to offset the difference in actual claims costs." Health Insurance

Continuation Coverage Under COBRA, Congressional Research Service, Janet Kinzer, July 11,

2013.

105.    For example, Defendant's COBRA Enrollment Notice sent to Plaintiff following Plaintiff's

termination, violates 29 C.F.R. § 2590.606–4(b)(4)(xii) because it fails to include an address

indicating where COBRA payments should be mailed.

106.    Not only that, it violates 29 C.F.R. § 2590.606-4(b)(4)(v) because the COBRA Enrollment

Notice itself never actually explains how to enroll in COBRA, nor does it bother including a

physical election form (both of which the model Department of Labor form includes). Instead, it

merely directs plan participants to a "catch-all" general H.R. phone number to enroll in COBRA,

operated by a third-party guised as Defendant benefits department, rather than explaining how to

actually enroll in COBRA. The COBRA Enrollment Notice contains no instructions on how to

actually enroll if one calls the phone number. Thus, it defies logic for the same document -- which

purports to be a "COBRA Enrollment Notice" -- not to also contain instructions on how to enroll

in COBRA.

107.    The COBRA Enrollment Notice also violates 29 C.F.R. § 2590.606– 4(b)(4)(xii) because

it fails to include information on how COBRA coverage can be lost prematurely, including, for

example, because of late payments. Furthermore, The Cobra Enrollment Notice violates 29 C.F.R.

§ 2590.606-4(b)(4)(vi) because it fails to provide all required explanatory information.

108.    Because The Cobra Enrollment Notice omits the above critical pieces of information, it

collectively violates 29 C.F.R. § 2590.606–4(b)(4), which not only that, during part of the "election

period" even the online option ceased to exist. Requires the plan administrator of a group-health

plan to provide a COBRA notice "written in a manner calculated to be understood by the average

plan participant." Without information on how to elect COBRA, or where to send payments, Defendant's COBRA enrollment notice simply is not written in a manner calculated to be understood by the average plan participant.

109.    As a result of receiving the deficient COBRA enrollment notice, Plaintiff failed to understand the notice and, thus, Plaintiff could not make an informed decision about Plaintiff's health insurance and lost health coverage.

110.    Plaintiff suffered a tangible injury in the form of economic loss, specifically the loss of insurance coverage and incurred medical bills, due Defendant's deficient COBRA form(s). In addition to a paycheck, health insurance is one of the most valuable things employees get in exchange for working for an employer like Defendant. Insurance coverage has a monetary value, the loss of which is a tangible and an economic injury.

111.    Not only did Plaintiff lose Plaintiff's insurance coverage, after Plaintiff lost the insurance Plaintiff incurred medical bills resulting in further concrete economic injury.

112.    Plaintiff suffered further concrete injury Plaintiff suffered an additional concrete harm in the form of significant wasted time (hours) trying to figure out how to self-treat at least one medical condition since Plaintiff no longer had health insurance.

113.    Defendant's above violations also subjected Plaintiff to a risk of real harm to the concrete interest in receiving a notice written in a manner calculated to be understood by the average plan participant, and to elect COBRA continuation coverage, the very interests that Congress sought to protect with ERISA/COBRA

114.    Finally, Defendant's deficient COBRA notice also caused Plaintiff an informational injury when Defendant failed to provide Plaintiff with information to which Plaintiff was entitled to by statute, namely a compliant COBRA election notice containing all information required by 29

C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a). Through Defendant and then COBRA, Congress created a right—the right to receive the required COBRA election notice—and an injury—not receiving a proper election notice with information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a). Defendant injured Plaintiff and the class members Plaintiff seeks to represent by failing to provide all information in its notice required by COBRA.

115.    As a result of these violations, which threaten Class Members' ability to maintain their health coverage, Plaintiff seeks statutory penalties, injunctive relief, attorneys' fees, costs and expenses, and other appropriate relief as set forth herein and provided by law.

116.    The governing statute clearly requires that "[t]he notice … shall be written in a manner calculated to be understood by the average plan participant and shall contain the following information:…(v) [a]n explanation of the plan's procedures for electing continuation coverage, including an explanation of the time period during which the election must be made, and the date by which the election must be made." 29 C.F.R. § 2590.606-4(b)(4)(v).

117.    As a threshold matter, Defendant's COBRA Enrollment Notice fails to adequately explain the procedures for electing coverage. By failing to include explanation of the procedures for electing coverage, Defendant interfered with Plaintiff's ability to elect COBRA continuation coverage. And, furthermore, by failing to adequately explain the procedures for electing coverage, Defendant prevented Plaintiff from understanding its rights under COBRA and how to make an informed decision about continuation coverage.

118.    Instead, Defendant's COBRA enrollment notice merely directs plan participants to a general phone number, rather than explaining how to actually enroll in COBRA. To further compound the confusion, the Defendant's COBRA enrollment notice contains no instructions on how to actually enroll if one calls the phone number. The telephone number provided by Defendant

in its COBRA enrollment notice is a "catch-all" number individuals can call with questions about anything benefit-related, including retirement funds, etc.

119.    This "catch-all" number is actually a phone number to a third-party administrator (an entity never identified in the COBRA notice).

120.    A "catch-all" number provided by Defendant and then routed to a third-party call center designed to answer anything HR-related simply cannot meet the strict informational statutory requirements of 29 C.F.R. § 2590.606- 4(b)(4)(v) required of all COBRA notices as to enrollment.

111. Unlike the Defendant's COBRA notice, the Model DOL notice provides a near fool-proof way to elect COBRA coverage by providing a physical election form to mail in, the date it is due, the name and address to where election forms should be sent, spaces for the names, social security numbers, and type of coverage elected by each plan participant or beneficiary.

121.    Defendant's COBRA enrollment notice simply does not contain "an explanation of the plan's procedures for electing continuation coverage, including an explanation of the time period during which the election must be made, and the date by which the election must be made" as required by 29 C.F.R. § 2590.606- 4(b)(4)(v). Merely telling Plaintiff and the putative class members to call a generic 1-800 number operated by a third-party and hope they are able to figure out how to enroll after they call is not what is legally required in a COBRA notice. Instead, the notice itself must contain information on how to enroll. Defendant's simply does not.

### COUNT VII:
### Violation of 29 C.F.R. § 2590.606-4(b)(4)(xii) Failure to provide the address to which payments should be sent

122.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-52 of this complaint as if set out in full herein.

123.    Defendant is specifically required to include in its notice the address to which payments should be sent. 29 C.F.R. § 2590.606-4(b)(4)(xii). The Cobra Enrollment Notice simply does not include this information.

124.    The COBRA enrollment notice provided to Plaintiff fails to actually state where payments are to be sent. This is a per se violation of 29 C.F.R. § 2590.606-4(b)(4)(xii), which on its face requires all COBRA notices include "the address to which payments should be sent."

125.    But Defendant's piecemeal strategy for COBRA information does not comport with the law. Rather, as demonstrated by the Model DOL COBRA notice, which is a single cohesive document, 29 C.F.R. § 2590.606- 4(b)(4)(xii) contemplates providing the statutorily required information in "a" COBRA "notice" (singular), rather than in multiple documents which must be read in conjunction with one another for plan participants/beneficiaries to glean the necessary information from.

126.    Without this information, Plaintiff is left ready and willing, but unable, to properly enroll and maintain continuation coverage.

127.    A misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision. Without knowing where to send payment, Plaintiff was misled as to how to enroll in COBRA.

128.    Because of the foregoing deficiencies, Defendant's COBRA notice is insufficient. Defendant has misled Plaintiff about the material parameters and procedures surrounding Plaintiff's right to elect COBRA coverage, failing to comply with the requirements made clear by the Code of Federal Regulations.

## COUNT VIII:
## Violation of 29 C.F.R. § 2590.606-4(b)(4)(vi) – Failure to Include Explanatory Information

129.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-52 of this complaint as if set out in full herein.

130.    The Cobra Enrollment Notice violates 29 C.F.R. § 2590.606- 4(b)(4)(vi) because it fails to provide all required explanatory information.

131.    For example, there is simply no explanation that a qualified beneficiary's decision whether to elect continuation coverage will affect the future rights of qualified beneficiaries to portability of group health coverage, guaranteed access to individual health coverage, and special enrollment under part 7 of title I of the Act.

## COUNT IX:
## Violation of 29 C.F.R. § 2590.606-4(b)(4) Failure to Provide COBRA Notice Written in a Manner Calculated "To Be Understood By the Average Plan Participant"

132.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-52 of this complaint as if set out in full herein.

133.    By failing to adequately explain the procedures for electing coverage, as required by 29 C.F.R. § 2590.606-4(b)(4)(v), coupled with the complete omission from The Cobra Enrollment Notice of how to actually enroll in COBRA, where to send payment, the consequences for untimely payments, failure to include all required explanatory information, and even who the COBRA Administrator is/was, Defendant cumulatively violated 29 C.F.R. § 2590.606- 4(b)(4). This particular section mandates that employers, like Defendant, must provide a notice of continuation coverage written in a manner calculated "to be understood by the average plan participant." Without the aforementioned critical pieces, Defendant's COBRA notice cannot be said to be written in a manner calculated "to be understood by the average plan participant." Thus, Defendant violated 29 C.F.R. § 2590.606-4(b)(4)(v).

## CLASS ACTION ALLEGATIONS

134.    The foregoing facts are incorporated herein.

135.    Plaintiff brings this action as a class action pursuant to the Federal Rules of Civil Procedure on behalf of the following persons: All participants and beneficiaries in the Defendant's Health Plan who were sent a COBRA notice by Defendant, in the form sent to Plaintiff, during the applicable statute of limitations period as a result of a qualifying event, as determined by Defendant's records, and did not elect continuation coverage.

136.    No administrative remedies exist as a prerequisite to Plaintiff's claims on behalf of the Putative Class. Even if they did, any efforts related to exhausting such non-existent remedies would be futile.

137.    Numerosity: The Class is so numerous that joinder of all Class members is impracticable. On information and belief thousands of individuals satisfy the definition of the Class.

138.    Typicality: Plaintiff's claims are typical of the Class. The COBRA notice that Defendant sent to Plaintiff was a form notice that was uniformly provided to all Class members. As such, the COBRA notice that Plaintiff received was typical of the COBRA notices that other Class Members received and suffered from the same deficiencies.

139.    Adequacy: Plaintiff will fairly and adequately protect the interests of the Class members, Plaintiff has no interests antagonistic to the class, and has retained counsel experienced in complex class action litigation.

140.    Commonality: Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class, including but not limited to: a. Whether the Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1); b. Whether Defendant's COBRA notice complied with the requirements of 29 U.S.C. §

1166(a) and 29 C.F.R. § 2590.606-4; c. Whether statutory penalties should be imposed against Defendant under 29 U.S.C. § 1132(c)(1) for failing to comply with COBRA notice requirements, and if so, in what amount; d. The appropriateness and proper form of any injunctive relief or other equitable relief pursuant to 29 U.S.C. § 1132(a)(3); and e. Whether (and the extent to which) other relief should be granted based on Defendant's failure to comply with COBRA notice requirements.

131. Class Members do not have an interest in pursuing separate individual actions against Defendant, as the amount of each Class Member's individual claims is relatively small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices and the adequacy of its COBRA notice. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class Members' claims in a single action.

141.    Plaintiff intends to send notice to all Class Members to the extent required the Federal Rules of Civil Procedure. The names and addresses of the Class Members are available from Defendant's records, as well as from Defendant's third-party administrator.

**CLASS CLAIM I FOR RELIEF:**
**Violation of 29 U.S.C. § 1166(a) and 29 C.F.R.§2590.606-4**

142.    Defendant is the plan sponsor and plan administrator of the Plan and was subject to the continuation of coverage and notice requirements of COBRA.

143.    Plaintiff and the other members of the Class experienced a "qualifying event" as defined by 29 U.S.C. § 1163, and Defendant was aware that they had experienced such a qualifying event.

144.    On account of such qualifying event, Defendant sent Plaintiff and the Class Members a COBRA notice in the forms that did not comply with the law.

145.    The COBRA notice that Defendant sent to Plaintiff and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 for the reasons set forth above (among other reasons). 137. These violations were material and willful.

146.    Defendant knew that its notice was inconsistent with the Secretary of Labor's Model Notice and failed to comply with 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4, but chose to use a non-compliant notice in deliberate or reckless disregard of the rights of Plaintiff and other Class Members.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, pray for relief as follows:

a. Designating Plaintiff's counsel as counsel for the Class;

 b. Issuing proper notice to the Class at Defendant's expense;

c. Declaring that the COBRA notice sent by Defendant to Plaintiff and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

d. Awarding appropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3), including but not limited to an order enjoining Defendant from continuing to use its defective COBRA notice and requiring Defendant to send corrective notices;

e. Awarding statutory penalties to the Class pursuant to 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1 in the amount of $110 per day for each Class Member who was sent a defective COBRA notice by Defendant;

f. Awarding attorneys' fees, costs and expenses to Plaintiff's counsel as provided by 29 U.S.C. § 1132(g)(1) and other applicable law; and

g. Granting such other and further relief, in law or equity, as this Court deems appropriate.

## JURY DEMAND

Plaintiffs demand trial by jury of all issues triable as of right by jury.


Dated: _____07/23/2021_____            Respectfully submitted,


                                         /s/ _Richard Thierry Champagne_____
                                         Richard Thierry Champagne, Esq.
                                         (BBO # 682995)
                                         Champagne Law Group, P.C.
                                         859 Willard Street, Suite 400
                                         Quincy, Massachusetts 02169
                                         Telephone: (617) 273-2464
                                         Facsimile: (954) 603-8777
                                         Email: rchampagne@champlawgroup.com
                                         Attorney for the Plaintiff

                                         Anthony M. Georges-Pierre, Esq.[1]
                                         Florida Bar No.: 533637
                                         agp@rgpattorneys.com
                                         Max L. Horowitz, Esq. [2]
                                         Florida Bar No.: 118269
                                         mhorowitz@rgpattorneys.com
                                         **REMER & GEORGES-PIERRE, PLLC**
                                         44 West Flagler Street, Suite 2200
                                         Miami, FL 33130
                                         Telephone: (305) 416-5000
                                         Facsimile: (305) 416-5005
                                         *Attorneys for the Plaintiff*

---

[1] Anthony M. Georges-Pierre, Esq. has applied to be admitted to this Court *pro hac vice*
[2] Max L. Horowitz, Esq. has applied to be admitted to this Court *pro hac vice*